**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLACK HAWK INC. and MUSTANG ENTERPRISES, INC., | Civil No.: 1:17-cv-3973 (AKH) |
| Petitioners, | |
| vs. | |
| APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., | |
| Respondent. | |

**MEMORANDUM OF LAW**
**IN OPPOSITION TO PETITION TO VACATE ARBITRATION AWARD**
**AND IN SUPPORT OF RESPONDENT'S**
**CROSS-PETITION TO CONFIRM ARBITRATION AWARD**

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Claire M. Hankin (CH2522)
1133 Westchester Avenue
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Claire.Hankin@wilsonelser.com
*Attorneys for Respondent*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………...……………………………ii

PRELIMINARY STATEMENT……………………………………………………………….1

PROCEDURAL HISTORY……………………………………………………………………1

CHOICE OF LAW…………………………………………………………………………...5

STANDARD OF REVIEW……………………………………………………………………8

ARGUMENT………………………………………………………………………………11

I.     THE PETITION TO VACATE THE AWARD MUST
BE DENIED AS UNTIMELY UNDER THE
FEDERAL ARBITRATION ACT § 12……………………………………...…...11

II.    THE PETITION MUST BE DENIED IN ITS ENTIRETY
BECAUSE PETITIONERS FAIL TO PRESENT ANY
STATUTORY GROUNDS UPON WHICH THE COURT
MAY VACATE THE ARBITRATION AWARD………………………………...13

      A.    The Award Does Not Violate Public Policy Because the Arbitrator
Reasonably Rejected Petitioners' "Untimeliness" Claim
Based on His Review of the Arbitration Record…………………….…...14

      B.    The Arbitrator Did Not Exceed His Powers When He Exercised
His Discretion to Determine the Statute Of Limitations Issue and the Court
Must Afford Deference to the Arbitrator's Award…………………….…..22

III.    THE COURT MUST CONFIRM THE AWARD BECAUSE
THERE IS NO STATUTORY BASIS UPON
WHICH IT MAY BE VACATED………………………………………………...26

CONCLUSION……………………………………………………………………………...30

i

# TABLE OF AUTHORITIES

**CASES**                                                                    Page(s)

*Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*,
   660 F.3d 281 (7th Cir. 2011)…………..…………………………………………………23

*Andros Compania Maritima, S.A. v. Marc Rich & Co.*,
   579 F.2d 691 (2d Cir.1978)…………………………………………………………..14

*Aramark Uniform & Career Apparel, Inc. v. Hunan, Inc*,
   276 Neb. 700, 757 N.W.2d 205 (2008)……………………………………………………..7

*AT & T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)……………………………………...………………………………....6

*Banco de Sequros del Estado v. Mutual Mar. Off., Inc.*,
   344 F.3d 255 (2d Cir. 2003)……………………………………………………………… 10, 11

*Barbier v. Shearson Lehman Hutton, Inc.*,
   948 F.2d 117 (2d Cir. 1991)…………………………………………………………... 27

*Cafferty v. Scotti Bros. Records, Inc.*,
   969 F.Supp. 193 (S.D.N.Y.1997) ………………………………………………………...24

*Chelsea Grand LLC v New York Hotel & Motel Trades Council, AFL-CIO*,
   16 CIV. 05301 (PAC), 2017 WL 1102699 (S.D.N.Y. Mar. 23, 2017) ……………………...24

*Chin v. State Farms Ins. Co.*,
    73 AD3d 918, 900 N.Y.S.2d 738 (2d Dept. 2010)………………………………………………15

*Colavito v. Hockmeyer*,
    605 F.Supp. 1482 (S.D.N.Y. 1985)…………………………………………………………11

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009)…………………………………………………………... 22

*Contee Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005) …………………………………………………………..16-17

*Crawford Group, Inc. v. Holekamp*,
   543 F.3d 971 (8th Cir. 2008)……………………………………………………………...23

*Delta Mine Holding Company v. AFC Coal Properties, Inc.*,
   280 F.3d 815 (8th Cir. 2001)…………………………………………………………21

*D.H. Blair & Co., Inc. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) ………………………………………………..8, 23-24, 27

*DiRussa v. Dean Witter Reynolds, Inc.,*
    121 F.3d 818 (2d Cir. 1997)………………………………………………………… 24

*Dow Corning Corp. v. Safety Nat'l Cas. Corp.,*
    335 F.3d 742 (8th Cir. 2003) ………………………………………………………..27

*Dulferco Int. Steel Trading v. T. Klaveness Shipping A/S,*
    333 F.3d 383 (2d Cir 2003) ……………………………………………….. 10, 11, 14, 25

*Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17,*
    531 U.S. 57 (2000) …………………………………………………………………..14, 18, 21

*Erin Constr. & Dev. Co., Inc. v. Meltzer,*
    58 A.D.3d 729, 873 N.Y.S.2d 315 (2009)…………………………………………….. 17

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ……………………………………………………………... 16

*Florasynth, Inc. v. Pickholtz,*
    750 F.2d 171 (2d Cir.1984)…………………………………………………………... 11, 14, 27, 28

*Folkways Music Publishers v. Weiss,*
    989 F.2d 108 (2d Cir. 1993)………………………………………………………… 14

*Franco v. Prudential Bache Sec., Inc.,*
    719 F.Supp. 63 (D.P.R.1989) ………………………………………………………..13

*Frazier v. CitiFinancial Corp., LLC,*
    604 F.3d 1313 (11th Cir. 2010) ……………………………………………………..23

*Gering-Fort Laramie Irr. Dist. v. Baker,*
    8 Neb. App. 1001, 606 N.W.2d 826 (Neb. Ct. App. 2000),
    *revd,* 259 Neb. 840, 612 N.W.2d 897 (2000)…………………………………………… 19

*Goldman v. Architectural Iron Co.,*
    306 F.3d 1214 (2d Cir. 2002) ……………………………………………………..9-10

*Guerrero v FJC Sec. Services Inc.,*
    12 CIV. 5763 SHS, 2013 WL 5273795 (SDNY Sept. 18, 2013) …………………………...11

*Gupta v. Cisco Sys., Inc.,*
    274 F.3d 1 (1st Cir. 2001) ……………………………………………………………... 9

*Haakinson & Beaty Co. v Inland Ins. Co.*,
216 Neb. 426, 344 N.W.2d 454 (1984) ……………………………………………18, 19

*Hakala v. Deutsche Bank AG*,
343 F.3d 111 (2d Cir. 2003) …………………………………………………...12

*Hall Street Assoc., L.L.C. v. Mattel, Inc.*,
128 S. Ct. 1396 (2008)………………………………………………… 7, 8, 22, 24

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ……………………………………………………..15-16, 17

*Idea Nuova, Inc. v. GM Licensing Group, Inc.*,
617 F.3d 177 (2d Cir. 2010) ……………………………………………………26

*Ins. Co. of N. Am. v. ABB Power Generation, Inc.*,
925 F.Supp. 1053 (S.D.N.Y. 1996) ………………………………………...……24

*InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*,
373 F.Supp.2d 340 (S.D.N.Y. 2005) ………………………………………10, 25

*I/S Stavbourg [O. H. Meling, Mgr. v National Metal Converters, Inc.*,
500 F.2d 424 (2d Cir. 1974)……………………………………………………14

*Jeereddi A. Prasad, M.D., Inc., Retirement Plan Trust Profit Sharing Plan v.
Investors Associates, Inc.*,
82 F.Supp.2d 365 (D.N.J. 2000) …………………………………………...………… 12

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
137 S. Ct. 1421 (2017) ………………………………………………………..6

*Klein v. GEICO Gen. Ins. Co.*,
109 AD3d 825, 971 N.Y.S.2d 58 (2d Dept. 2013) …………………………………29

*Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*,
145 F.3d 85 (2d Cir. 1998)……………………………………………………… 28

*Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*,
357 F.3d 266 (2d Cir. 2004)……………………………………………………29

*MasTec N. Am., Inc. v. MSE Power Sys.*,
581 F.Supp.2d 321(N.D.N.Y. 2008) …………………………………………...15

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ………………………………………………………... 6

*Matter of New York State Correctional Officers & Police Benevolent Assn.*,
   94 N.Y.2d 321 (1999)…………………………………………………………………14-15

*MBNA Am. Bank, N.A. v. Hansen*,
   16 Neb. App. 536, 745 N.W.2d 609 (2008)……………………………………… 28

*McKee v. Home Buyers Warranty Corp. II*,
   45 F.3d 981 (5th Cir. 1995) ……………………………………………………27

*Medicine Shoppe Int'l, Inc. v. Turner Invs., Inc.*,
   614 F.3d 485 (8th Cir. 2010)……………………………………………………… 23

*M.J. Woods, Inc. v. Conopco, Inc.*,
   271 F.Supp.2d 576 (S.D.N.Y. 2003) ……………………………………………..13

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
   460 U.S. 1 (1983)…………………………………………………………………...13, 16

*Motor Vehicle Acc. Indemnification Corp. v. Aetna Cas. & Sur. Co.*,
   89 N.Y.2d 214, 652 N.Y.S.2d 584 (1996)……………………………………… 21

*Nebraska v. Henderson*,
   277 Neb. 240, 762 N.W.2d 1 (2009) …………………………………………….7

*N.Y. City Transit Auth. v. Transp. Workers Union of Am., Local 100, AFL-CIO*,
   99 N.Y.2d 1, 780 N.E.2d 490 (2002)…………………………………………….. 15

*Oxford Health Plans LLC v. Sutter*,
   133 S. Ct. 2064 (2013)…………………………………………………………… 22

*Paperworkers v Misco, Inc.*,
   484 U.S. 29 (1987) ……………………………………………………………..14

*Piccolo v. Dain, Kalman, & Quail, Inc.*,
   641 F.2d 598 (8th Cir.1981)……………………………………………………13

*Porter v. Thompson Roofing & Sheet Metal Co.*,
   242 F.3d 367 (2d Cir. 2000) …………………………………………………..28

*Portfolio Recovery Assocs., LLC v. King*,
   14 N.Y.3d 410, 927 N.E.2d 1059 (2010) ……………………………………25

*Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*,
   497 F.3d 133 (2d Cir. 2007) …………………………………….…………...9, 27

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ……………………………………………………………7, 12

*Prime Therapeutics L.L.C. v. Omnicare, Inc.*,
    555 F. Supp. 2d 993 (D. Minn. 2008)…………………………………………………..23

*Prudential-Bache Sec., Inc. v. Caporale*,
    664 F.Supp 72 (S.D.N.Y. 1987) …………………………………………………… 17

*Samaritan Med. Ctr. v. Local 1199, SEIU*,
     No 7:09-CV-01072, 2010 WL 2869762 (N.D.N.Y. July 19, 2010) …………………………9

*Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc.*,
    857 F.2d 1235 (8th Cir. 1988) ……………………………………………………………11

*Schafer v. Multiband Corp.*,
    551 F. App'x 814 (6th Cir. 2014) …………………………………………………...22

*Siegel v. Titan Indus. Corp.*,
    779 F.2d 891 (2d Cir. 1985)……………………………………………………………17

*Snyder v. EMCASCO Ins. Co.*,
    259 Neb. 621, 611 N.W.2d 409 (2000) ……………………………………………...20

*State v. Henderson*,
    277 Neb. 240, 762 N.W.2d 1 (2009) …………………………………………… 7, 10, 18

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
    648 F.3d 68 (2d Cir. 2011)…………………………………………………………...14

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
    548 F.3d 85 (2d Cir. 2008),
    *rev'd and remanded on other grounds,* 559 U.S. 662 (2010)…………………… 9, 10, 23, 24

*Town of Babylon v. Carson*,
    111 A.D.3d 951, 976 N.Y.S.2d 501 (2d Dept. 2013) ………………………………………14

*Tracy Broad. Corp. v. Telemetrix, Inc.*,
    17 Neb. App. 112, 756 N.W. 2d 742 (2008)…………………………………………… 7

*Turner v. United Steelworkers of Am., Local 812*,
    581 F.3d 672 (8th Cir. 2009) ……………………………………………………………… 29

*Trustees of the N.Y. City Dist. Council of Carpenters Pension Fund v.*
*High Performance Floors Inc.*,
    No. 15 CIV. 0781 (LGS), 2016 WL 3194370 (S.D.N.Y. June 6, 2016), *reconsideration*

*denied*, No. 15 CIV. 0781 (LGS), 2016 WL 3911978 (S.D.N.Y. July 15, 2016)……… 28-29

*United SteelWorkers of America, AFL-CIO-CLG v. St. Gobain Ceramics & Plastics, Inc*.,
    505 F.3d 417 (6th Cir. 2007) …………………………………………………………..16

*Wachovia Sec., Inc. v. Bonebrake*,
    No. Doc. 1084 No. 455, 2009 WL 1916059 (Neb. Dist. Ct. June 19, 2009) ………7, 8, 23, 24

*Wachovia Sec., LLC v. Brand*,
    671 F.3d 472 (4th Cir. 2012) …………………………………………………………..22

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004) ………………………………………… 10, 11, 12, 23, 24-25

*Webster v. A.T. Kearney, Inc*.,
    507 F.3d 568 (7th Cir. 2007) …………………………………………………………...11

*Wein & Malkin LLP v. Helmsley-Spear, Inc*.,
    6 N.Y.3d 471, 846 N.E.2d 1201 (2006) ……………………………………………... 10, 11

*Westerbeke Corp. v. Dailhatsu Motor Co., Ltd*.,
    304 F.3d 200 (2d Cir 2002) ……………………………………….....………10, 11, 24, 25

*White v. Local 46 Metallic Lathers Union & Reinforcing Iron Workers of N.Y. Cit*y,
    No. 01 CIV. 8277 (RMB) (GWG), 2003 WL 470337 (S.D.N.Y. Feb. 24, 2003) …………..13

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp*.,
    103 F.3d 9 (2d Cir.1997) …………………………………………………………………...8

*Yosemite Ins. Co. v. Nationwide Mut. Ins. Co*.,
    No. 16 CIV. 5290 (PAE), 2016 WL 6684246 (S.D.N.Y. Nov. 10, 2016) ……………………9

## STATUTES AND OTHER AUTHORITIES

9 U.S.C. § 9 ……………………………………………………...…1, 2 7, 8, 9, 26, 28, 29, 30

9 U.S.C. § 10...…………………………………………………1, 4, 7, 8, 9, 10, 11, 22, 23, 26, 28, 29

9 U.S.C. § 11 …………………………………………………………………...7, 9, 26, 28

9 U.S.C. § 12…………………………………………………………1, 4, 8, 11, 12, 13, 14, 29, 30

9 U.S.C. § 13 ……………………………………………………………………………26

28 U.S.C. § 112…………………………………………………………………………………2

28 U.S.C. § 1332(a)(2)……………………………………………………………………………………2

28 U.S.C. § 1391……………………………………………………………………………………..2

28 U.S.C. § 1927 …………………………………………………………………………….. 31

<u>Neb. Rev. Stat</u>. § 25-205………………………………………………………………….4, 5, 19, 20

<u>Neb. Rev. Stat</u>. § 25-216 ……………………………………………………………….4, 19-20, 21

<u>Neb. Rev. Stat</u>. § 25-2612……………………………………………………………… 9, 27

<u>Neb. Rev. Stat</u>. § 25-2613 ……………………….………………………4, 8, 9, 12, 17, 22, 27, 29

<u>Neb. Rev. Stat</u>. § 25-2614 ………………………………………………………………….9, 27

<u>Neb. Rev. Stat</u>. § 25–2615……………………………………………………………………27

<u>Neb. Rev. Stat</u>. § 25-2619……………………………………………………………………...2

CPLR § 202…………………………………………………………………….…………...19

CPLR §213(2) …………………………………………………………………...…………19

CPLR § 7502(b)……………………………………………………………..……………... 17

CPLR § 7511(a)………………………………………………………………………… 12

CPLR § 7511(b)…………………………………………………...…………….4, 8, 9, 17, 21

CPLR § 7511(e) ……………………………………………………………………………29

CPLR § 7514(a) ………………………………………………………………………....29

AAA Commercial Arbitration Rules, R-49…………………………………………………...11

AAA Commercial Arbitration Rules, R-52(c) …………………………………………….2, 26

## PRELIMINARY STATEMENT

Respondent, APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC. ("AUCRA"), hereby respectfully submits this Memorandum of Law in opposition to the Petition to Vacate Arbitration Award (the "Petition"), filed by BLACK HAWK INC. and MUSTANG ENTERPRISES, INC. (collectively, the "Petitioners" or "Black Hawk"), and in support of its accompanying Cross-Petition to Confirm the Award that was issued on January 27, 2017, in the arbitration proceeding administered by the American Arbitration Association ("AAA") (ICDR Case No.: 01-16-0000-2552). This Court should deny the Petition to vacate in its entirety for each and all of the following reasons: first, because it is untimely as it was not *served* on Respondent within three months as required by the plain language of the Federal Arbitration Act ("FAA") (9 U.S.C. § 1 *et seq*.), (*see id.* at § 12); and second, because Petitioners have not, and cannot, present any valid grounds upon which this Court may properly vacate the Award (*see id. at* § 10(a)). Absent any statutory basis to grant the Petition to vacate, the Court must confirm the Award. *Id.* at § 9.

## PROCEDURAL HISTORY

Respondent hereby incorporates the facts contained in the accompanying Notice of Cross-Petition, Verified Answer to Petition and Cross-Petition to Confirm Arbitration Award, and Declaration of Claire M. Hankin in support of the Cross-Petition, together with Exhibits 1-11 annexed thereto, including the parties' arbitration submissions, as if fully set forth herein. Black Hawk initiated this action by filing a Verified Petition to Vacate Arbitration Award in the Supreme Court of the State of New York, New York County, on April 27, 2017, Index No.: 652291/2017 (the "State Court Action"). On May 4, 2017, Respondent consented to service of the Petition via regular mail addressed to counsel. (*See* Ex. 10). On May 25, 2017, AUCRA then

timely removed the Petition to this Court on the basis of diversity jurisdiction. 28 U.S.C. § 1332(a)(2); *see also* Docket Entry No. 1 "Notice of Removal." Venue in this district is proper because the parties agreed to participate in arbitration administered in New York, New York by the International Centre for Dispute Resolution ("ICDR"), an arm of the AAA. 28 U.S.C. §§ 112, 1391; 9 U.S.C. § 9; *see also* AAA Commercial Arbitration Rules, R-52(c).[1]

The underlying dispute and arbitration proceeding arise from a Reinsurance Participation Agreement executed by and between the parties, and effective for a 3-year term starting on August 20, 2008 ("RPA"), with respect to Black Hawk's participation in the risk-sharing component of the Premier Exclusive® workers' compensation program (the "Program") administered by AUCRA, a licensed captive reinsurance facility, and its affiliates. (*See* Ex. 1). In addition to the RPA, the Program also consisted of a standard workers' compensation insurance policy issued to Black Hawk by AUCRA's affiliate Continental Indemnity Company, a licensed insurer in New York, with rates and forms approved by New York's Department of Financial Services ("DFS") and its predecessor, the New York Department of Insurance, as well as a separate reinsurance agreement between AUCRA and Continental and other affiliates. The RPA contains a general Nebraska choice-of-law clause (*see* Ex. 1 ¶ 16), as well as an arbitration provision whereby the parties manifested their express intent to have any and all disputes arising out of or related to the RPA fully determined via binding arbitration in accordance with the rules of the AAA (*see* Ex. 1 ¶ 13(A)-(B), (I)). The arbitration provision also provides that the

---

[1] *See also* Ex. 1, RPA ¶ 13(G) ("Judgment upon the award rendered by the arbitrator[s] may be entered by any court of competent jurisdiction in Nebraska or application may be made in such court for judicial acceptance of the award and an order of enforcement as the law of Nebraska may require or allow.") Under <u>Neb. Rev. Stat</u>. § 25-2619, an application to the Nebraska court in this matter would require venue to be placed in the county where the arbitration was held – i.e., New York. However, the RPA's arbitration provision also incorporates by reference the AAA rules, including R-52(c), providing that, "[p<u>arties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.</u>" To the extent that Paragraph 13(G) would have required an application to confirm the award to be venued in Nebraska, AUCRA consents to venue in this District based upon the parties' agreement to arbitrate in New York.

Arbitrator's award "shall be binding and conclusive on the parties" (*see* Ex. 1 ¶ 13(H)), and, excluding punitive damages, grants discretion to award other costs and expenses as deemed appropriate, including attorneys' fees, arbitration costs, and arbitrators' fees (*see* Ex. 1 ¶ 13(L)).

The initial dispute over Black Hawk's failure to pay the outstanding balance owed to AUCRA under the RPA arose when Black Hawk was issued a Notice of Cancellation, effective August 18, 2010, for the underlying Continental Policy due to non-payment of premiums. (*See* Ex. 4). As a result of that policy cancellation, Black Hawk incurred additional Early Cancellation fees and charges pursuant to the clear and unambiguous terms of the RPA. (*See* Ex. 1 ¶ 4). However, following Black Hawk's continued nonpayment of their remaining overdue account balance, on January 25, 2016, AUCRA filed a Demand for Arbitration with the AAA against Black Hawk seeking $201,040.25, plus interest and attorney's fees, pursuant to the RPA's Arbitration Provision.[2] (*See* Ex. 2).

The Arbitrator jointly selected by the parties, Nasri H. Barakat, reviewed both sides' extensive Arbitration Submissions and issued a "Partial Final Award of Arbitrator" in favor of AUCRA on December 5, 2016, in the amount of $201,040.25 ("Partial Award"). (*See* Ex. 7). The Partial Award provided a final resolution on issues of liability with respect to AUCRA's claims against Black Hawk, while reserving the Arbitrator's jurisdiction to later decide on award of other specific costs and expenses. (*See id.* at 2). The "Final Award of Arbitrator" was issued and mailed to the parties on January 27, 2017 ("Award" or "Final Award"), and resolved the remaining damages issues, including interest, attorney's fees and costs, and the Arbitrator's and the ICDR's fees. (*See* Ex. 8). Without revisiting the Partial Award's liability determinations, the

---

[2] Although the situs of the arbitration called for in the RPA was Tortola, British Virgin Islands (*see* Ex. 1 ¶ 13(A), (I)), as an accommodation to Black Hawk, AUCRA agreed to have the arbitration held in New York State where Black Hawk is domiciled.

Final Award also incorporated by reference the Arbitrator's reasoning for those decisions delineated in the Partial Award. (*See id.*). The instant Petition action predominately concerns the Arbitrator's ruling set forth in the Partial Award that Black Hawk's "argument regarding the 'untimeliness' of AUCRA's claim is unavailing because no conclusive evidence was submitted to show that AUCRA has ever abandoned its claim against Black Hawk." (*See* Ex. 7 at 1).

Petitioners now seek to have this Court vacate the Award, arguing that the Arbitrator violated public policy and exceeded his powers by disregarding the statute of limitations argument under Nebraska law that they purportedly raised in their Arbitration Submission. However, not only is Black Hawk's Petition to Vacate barred under FAA § 12 as a result of untimely service, but they also fail to present any legitimate grounds, whatsoever, upon which this Court may vacate any portion of the Award pursuant to the provisions of FAA § 10(a), and/or the corresponding state arbitration laws of Nebraska or New York, codified at Neb. Rev. Stat. § 25-2613 and CPLR § 7511(b), respectively.[3] Black Hawk does *not* challenge the conclusions of the Arbitrator with regard to the validity, amount or the accuracy of AUCRA's claims, but rather seeks to vacate the Award exclusively on the basis of the Arbitrator's alleged failure to rule that the arbitration proceeding itself was untimely commenced pursuant to Neb. Rev. Stat. § 25-205. Black Hawk's contention that the arbitration was untimely, however, is directly contradicted by Section 25-216 of the Nebraska Statute, as well as exhibits originally included in both parties' Arbitration Submissions showing that Black Hawk applied a credit of $9,277.00 against their debt to AUCRA in 2012, noted on their November 27, 2012 Premier Exclusive Statement, which restarted the 5 year statute of limitations period. (*See* Neb. Rev. Stat. § 25-216; *see also* Ex. 5). Moreover, Black Hawk's Arbitration Submission conveniently omits

---

[3] Although these bodies of arbitration law differ in a number of ways not necessarily relevant here, the statutory grounds for vacating an arbitration award enumerated under these specific sections are essentially the same.

any mention of applicable statute of limitations, or the timing of claims in general, and they have failed to demonstrate in their Petition that such a defense was ever properly raised during the arbitration. It is of course too late to raise that issue now.

Nevertheless, the Arbitrator's Award indicates that the tribunal carefully considered Black Hawk's "untimeliness" defense and, based on the facts and documentary evidence available, appropriately determined it to be without merit. Even if the Arbitrator's ruling as to the timeliness of AUCRA's claim had been made in error – which Respondent contends is not the case – the Award would still not violate any clear strong public policy and remains well within the Arbitrator's discretionary powers. Accordingly, there are no available statutory grounds under Federal, New York, and/or Nebraska State laws whereby this Court may properly vacate the Award. The Court must, therefore, deny Black Hawk's Petition in its entirety, and grant AUCRA's Cross-Petition for an Order confirming the Award and directing the entry of judgment thereon, as well as awarding attorneys' fees pursuant to 28 U.S.C. § 1927, and for such other and further relief as the Court deems just and proper.

## CHOICE OF LAW

This action is governed by the FAA and/or Nebraska Uniform Arbitration Act (Neb. Rev. Stat. §§ 25-2601-22 ("NUAA"),[4] and Black Hawk's application of New York's CPLR for

---

[4] For purposes of determining this Petition action, the Court need not address the issue of whether the RPA falls under Neb. Rev. Stat. § 25-2602.01(f)(4)'s limitation on the express validity, enforceability, and irrevocability of arbitration agreements "concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract," and reverse-preemption of the FAA under the McCarran–Ferguson Act, 15 U.S.C. §§ 1011-1015. Nonetheless, in that respect, the United States Supreme Court has recently reaffirmed the strong federal pro-arbitration policy:

> The FAA ... preempts any state rule discriminating on its face against arbitration—for example, a "law prohibit[ing] outright the arbitration of a particular type of claim." ....And not only that: The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements.

vacatur of arbitration awards – albeit while relying entirely upon citation to Nebraska case law – is wholly misplaced. Paragraph 16 of the RPA features a generic choice of law clause stating, "[the] Agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska," and that *any matter not subject to the RPA's dispute resolution provisions of Paragraph 13*, "shall be resolved exclusively by the courts of Nebraska without reference to its conflict of laws." (*See* Ex. 1 ¶16). Accordingly, Paragraphs 13(A)-(M)  provide for binding and conclusive arbitration, "in accordance with the rules of the [AAA]," of "[a]ll disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of [the RPA], (2) the management or operations of [AUCRA], or (3) any other breach or claimed breach of [the RPA] or the transactions contemplated [t]herein…." (*See* Ex. 1 ¶ 13(B), (I)). The choice-of-law provision covers the substantive rights and duties of the parties, while the arbitration clause covers arbitration proceedings; and neither sentence intrudes upon the other. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 64 (1995). Thus, while the parties' underlying contract dispute may be governed by substantive Nebraska State law, the arbitration and its related activities are generally governed by procedural AAA rules and, where those rules are silent, by the provisions of the FAA. *See id.* at 52 (holding a generic choice-of-law clause does not automatically implicate the chosen forum's arbitration law, unless explicitly provided for in the arbitration provision). In this case, however, in addition to the RPA stating in two places that arbitration be conducted "under the provisions of" and "in accordance with the rules of" the AAA (*see* Ex. 1 ¶ 13(A), 13(I)), Paragraph 13(G) stipulates that "[j]udgment upon the award rendered by the arbitrator[s] may be entered by any court of competent jurisdiction in

---

*Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)). Any consideration of state law, then, must bear in mind the *Kindred* preemption principle, under which Neb. Rev. Stat. § 25-2602.01(f)(4) is preempted by the FAA .

Nebraska or application may be made in such court for judicial acceptance of the award and an order of enforcement *as the law of Nebraska may require or allow*" (*id.* at ¶ 13(G)).

"Arbitration in Nebraska is governed by the [FAA] if it arises from a contract involving interstate commerce; otherwise, it is governed by Nebraska's [UAA]." *State v. Henderson*, 277 Neb. 240, 243, 762 N.W.2d 1, 4 (2009). *See also Aramark Uniform & Career Apparel, Inc. v. Hunan, Inc*, 276 Neb. 700, 703, 757 N.W.2d 205, 209 (2008) ("[a]rbitration in Nebraska is governed by the UAA . . . But if arbitration arises from a contract involving interstate commerce, it is governed by the FAA"); *Tracy Broad. Corp. v. Telemetrix, Inc*., 17 Neb. App. 112, 122, 756 N.W. 2d 742, 750 (2008) (same). Even so, here, application of the FAA and the NUAA would produce similar outcomes due to the many similarities of the provisions relevant to the subject dispute.[5] The RPA clearly implicates interstate commerce and is a contract between parties of different states; AUCRA is an Iowa corporation and Black Hack is incorporated in New York. Moreover, to the extent that applicable procedural rules under the FAA conflict with the NUAA, the federal arbitration rules preempt the state law. *See Preston v. Ferrer*, 552 U.S. 346, 360-62 (2008). Therefore, where application of the FAA and NUAA differ, the FAA controls.

Nevertheless, Petitioners have failed to demonstrate any valid basis, whatsoever, for vacating the Award, whether under New York, Nebraska, or Federal law. Since Petitioners have mistakenly assumed that this vacatur action is controlled by New York law, for the sake of

---

[5] In *Hall Street Assoc., L.L.C. v. Mattel, Inc*., 552 U.S. 576 (2008), the U.S. Supreme Court stated that while FAA §§ 9, 10, and 11 are the "exclusive regimes" for judicial review of arbitration awards in federal courts, the FAA does not "exclude more searching review based on authority outside the statute as well." *Id.* at 1406.  Thus, the NUAA can theoretically provide a broader scope of review than under the FAA that might include violation of state public policy or manifest disregard of the law pursuant to state law. In practice, however, the Nebraska decisions to date post-*Hall Street* have nevertheless applied the limited FAA standard.  *See e.g., Wachovia Sec., Inc. v. Bonebrake*, No. Doc. 1084 Nor 455, 2009 WL 1916059 (Neb. Dist. Cor 2009) ("From these cases, it seems clear that manifest disregard of the law no longer exists as an extra-statutory ground for vacating an arbitration award"); *see also Nebraska v. Henderson*, 277 Neb. 240, 243, 762 N.W.2d 1, 4 (2009) (applying Nebraska law where no interstate commerce involved, but looking to federal case law explaining the scope of judicial review of arbitration awards "because the applicable provisions of the [NUAA] and the [FAA] are similar").

argument, Respondent will analyze the legal questions raised by the Petition under both New York and Nebraska law, as well as the applicable federal law, to demonstrate that the Petition to Vacate should be denied under any standard.

## STANDARD OF REVIEW

The FAA provides that "[n]otice of a motion to vacate, modify, or correct an award must be *served* on the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added).

Substantively, the FAA allows for an extremely limited review of an arbitration award. A court may only vacate an award upon finding that either: (1) it was procured by corruption, fraud, or undue means; (2) there was evidently partiality or corruption in the arbitrator; (3) the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1)-(4).[6]

A party moving to vacate an arbitral award has the burden of proof, and the showing required to avoid confirmation is very high. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). "[A]t any time within one year after the award is made any party may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9. The Court must grant such order unless the award is vacated, modified, or corrected as prescribed in FAA

---

[6] CPLR § 7511(b) and Neb. Rev. Stat. §25—2613(a) provide essentially the same four grounds for vacating an award. However, the Nebraska statute also includes the following additional grounds for vacatur, neither of which is applicable here: "(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 25-2603, and the party did not participate in the arbitration hearing without raising the objection; or (6) An arbitrator was subject to disqualification pursuant to Section 25-2604.01, and failed upon receipt of timely demand, to disqualify himself or herself as required."

8

§§ 10-11. *Id.* In contrast, the correlating Nebraska provision provides for automatic confirmation of an award "[w]ithin sixty days of the application of a party…unless within the [imposed] time limits…grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in [§§] 25-2613 and 25-2614." Neb. Rev. Stat. § 25-2612.

In addition, although not explicitly included in Section 10 of the FAA, some circuits have also permitted vacatur under rare exceptional circumstances where an award is made in "manifest disregard of the law." *See e.g.*, *Gupta v. Cisco Sys., Inc.*, 274 F.3d 1, 3  (1st Cir. 2001); *accord Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91-92 (2d Cir. 2008), *rev'd and remanded on other grounds,* 559 U.S. 662 (2010). There is a circuit split with regard to this issue, but the Second Circuit, among others recognizes this judicially created ground for vacatur. *See Samaritan Med. Ctr. v. Local 1199, SEIU*, No. 7:09-CV-01072, 2010 WL 2869762, at *3 (N.D.N.Y. July 19, 2010) ("In the Second Circuit, courts will 'vacate an award only upon finding a violation of one of the four statutory bases [enumerated in FAA § 10(a)], or, more rarely, if we find a panel has acted in manifest disregard of the law'") (quoting *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007)); *see also Yosemite Ins. Co. v. Nationwide Mut. Ins. Co.,* No. 16 CIV. 5290 (PAE), 2016 WL 6684246, at *5 (S.D.N.Y. Nov. 10, 2016) (recognizing "manifest disregard" as a doctrine of last resort operating as a judicial gloss on the specific grounds in FAA § 10 – not a separate broader ground; and holding that vacatur due to arbitrator's incorrect interpretation of treaty would exceed the limited scope of judicial review).

Where recognized, a finding of manifest disregard of the law is limited to cases "where [1] a governing legal principle is well defined, explicit, and clearly applicable to the case, and [2] where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." *Goldman v. Architectural Iron Co.*, 306

F.3d 1214, 1216 (2d Cir. 2002); *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004); *Banco de Sequros del Estado v. Mutual Mar. Off., Inc.*, 344 F.3d 255, 263 (2d Cir. 2003). *See also Westerbeke Corp. v. Dailhatsu Motor Co., Ltd.*, 304 F.3d 200, 217 (2d Cir. 2002) (requiring demonstration that the arbitrator knew of the relevant legal principle, appreciated that it controlled the outcome of the disputed issue, and yet willfully flouted the governing law by refusing to apply it). Significantly, however, and as noted by Petitioners in their supporting Memorandum of Law, "[s]trong deference is due an arbitrative tribunal," and "a court may not overrule an arbitrator's decision simply because the court believes that its own interpretation of the contract, or the facts, would be the better one." *State v. Henderson*, 277 Neb. 240, 243-44 (Neb. 2009). Mere erroneous interpretation or application of the law by the arbitrator will not suffice to establish "manifest disregard." *Dulferco Int. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (holding that any plausible reading of an award that fits within the law will sustain it, and noting, as further evincing the standard's stringent nature, that the Second Circuit vacated awards for manifest disregard in only 4 out of at least 48 cases between 1960 and 2003). Likewise, manifest disregard of facts or evidence is also not a proper basis for vacatur. *See Wein & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 483-84, 846 N.E.2d 1201, 1208-09 (2006); *Stolt-Nielsen*, 548 F.3d at 91. Thus, an arbitral award "should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached," even if the reasoning is based on factual or legal error. *Wallace*, 378 F.3d at 190-93 (quoting *Banco de Sequros del Estado*, 344 F.3d at 260); *see also InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*, 373 F.Supp.2d 340, 355 (S.D.N.Y. 2005) (upholding award of attorneys fees as "barely colorable" based on interpretation of arbitrator's statements as charge of bad faith even absent the award's express use of that term).

Black Hawk has not presented any evidence to show that vacatur is appropriate under any of the FAA's enumerated grounds. Because the Petition is entirely dependent on Black Hawk's unsupported allegation that the Arbitrator ignored the applicable statute of limitations in rendering the Award, this Court may not vacate the Award under FAA § 10 and, accordingly, the Petition should be denied in its entirety. As Petitioners are unable to present any grounds warranting vacatur, the Court must grant Respondent's Cross-Petition to Confirm the Award.

## ARGUMENT

### I.   THE PETITION TO VACATE THE AWARD MUST BE DENIED AS UNTIMELY UNDER THE FEDERAL ARBITRATION ACT § 12

Under Section 12 of the FAA, "[n]otice of motion to vacate, modify or correct an award *must be served* upon the adverse party or his attorney *within three months after the award is filed or delivered*." 9 U.S.C. § 12 (emphasis added); *Wallace v. Buttar*, 378 F.3d 182, 197 (2d Cir. 2004). There is no recognized statutory or common law exception to this time limitation. *See e.g.*, *Webster v. A.T. Kearney, Inc.,* 507 F.3d 568, 574 (7th Cir. 2007) (denying petition to vacate filed 1 day late); *Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc.*, 857 F.2d 1235, 1238 (8th Cir. 1988) (finding no exceptions to time for service of notice under § 12). "Thus, under its terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run...." *Florasynth, Inc. v. Pickholtz*, 750 F.2d 171, 175 (2d Cir.1984).

This court has previously held that the three month period under the FAA begins accruing from the date of the award. *Guerrero v FJC Sec. Services Inc.*, 12 CIV. 5763 SHS, 2013 WL 5273795, at *4 (SDNY Sept. 18, 2013) (citing *Colavito v. Hockmeyer,* 605 F.Supp. 1482, 1487 (S.D.N.Y. 1985)). *See also* AAA Commercial Rules, R-49 ("Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail … or electronic service..."). Here, the Final Award was both issued and mailed to the parties on January 27,

2017, and therefore, at the latest, the Petition to vacate was required to be *served* on Respondent on or before April 27. 2017.[7] It was not served until May 8, 2017. (*See* Exs. 9-10). The circuit courts have interpreted this provision strictly and have previously denied applications to vacate an award where a party submitted its motion to the court within three months, but failed to serve the opposing party within three months. *See Webster*, 507 F.3d at 571 – 572.

In addition, FAA § 12 refers to "an award," and is not expressly limited to the last in a series of awards. Black Hawk's Petition to vacate the Award is grounded solely upon the Arbitrator's ruling on their purported statute of limitations defense, which determination was originally set forth in the Partial Final Award, and then incorporated by reference into the Final Award. The Partial Final Award, dated December 5, 2016, stipulates that it is made "in final settlement of the claims submitted in this arbitration, except for interest, attorney's fees and costs, and the Arbitrator's and the ICDR's fees," which specific issues were reserved for the Final Award, and that "[a]ll other claims not expressly granted [in the Partial Final Award] are hereby denied." (*See* Ex. 7). Thus, the Arbitrator made clear that his liability determinations, including with regard to any applicable statute of limitations, were final as of the date of the Partial Final Award. Accordingly, the 3-month period in which to challenge the rulings on liability set forth in the Partial Final Award expired on or about March 5, 2017, and Black Hawk's Petition to vacate – resting entirely upon such grounds – was filed over 50 days too late.

---

[7] FAA § 12's counterparts under New York and Nebraska law provide that "[a]n application to vacate or modify an award may be made by a party within [90] days after its delivery to him." CPLR § 7511(a); Neb. Rev. Stat. § 25-2613(b). As the FAA's rule governs only service, not filing, and the 3-month period set forth in § 12 is frequently longer than the 90 day period set forth in state law, it is common to ensure compliance with both deadlines. *See, generally*, *Hakala v. Deutsche Bank AG*, 343 F.3d 111, 113-114 (2d Cir. 2003) (question of whether NY's 90 day limitations period tolled in diversity case); *see also*, *Jeereddi A. Prasad, M.D., Inc., Retirement Plan Trust Profit Sharing Plan v. Investors Associates, Inc.*, 82 F.Supp.2d 365 (D.N.J. 2000) (finding FAA's limitations period governed, despite general NY choice-of-law provision and clause that provided arbitration was to be governed by NASD rules, which were silent on limitations); *and Preston v. Ferrer*, 552 U.S. 346, 359-62 (2008) (FAA preempts procedural state arbitration laws). Accordingly, CPLR § 7511(a)'s 90 day limitations period does not apply here.

Although the Petition was filed in the New York State Court Action on or about April 27, 2017, AUCRA first received a courtesy copy via email on May 1st, and was not actually served until May 8th. (*See* Exs. 9-10). Even if Black Hawk had only challenged the liability rulings and damages rulings made in the Final Award, and not the liability rulings made in the Partial Final Award, their Petition would still be untimely by at 3 three days. 9 U.S.C. § 12; *see also, e.g., Franco v. Prudential Bache Sec., Inc.*, 719 F.Supp. 63 (D.P.R.1989) (refusing to hear claim when service was 17 days late); *Piccolo v. Dain, Kalman, & Quail, Inc.*, 641 F.2d 598 (8th Cir.1981) (refusing to allow *pro se* plaintiffs to proceed with a motion to vacate that was served 21 days late); *White v. Local 46 Metallic Lathers Union & Reinforcing Iron Workers of N.Y. City*, No. 01 CIV. 8277 (RMB) (GWG), 2003 WL 470337, at *4 (S.D.N.Y. Feb. 24, 2003) (denying motion served 3 months late). Therefore, the Court should deny and/or dismiss the Petition to vacate and confirm the Award in its entirety because, even under the most favorable application of FAA § 12 to these facts, Petitioners failed to *serve* AUCRA within the required statutory period. *See M.J. Woods, Inc. v. Conopco, Inc.,* 271 F.Supp.2d 576 (S.D.N.Y. 2003) (finding that a party's failure to seek modification, vacation, or correction of arbitral award within FAA's 3 month limitation period required confirmation of award). Since Black Hawk's Petition is untimely, the Court need not consider the merits of their arguments for vacatur.

## II.   THE PETITION MUST BE DENIED IN ITS ENTIRETY BECAUSE PETITIONERS FAIL TO PRESENT ANY STATUTORY GROUNDS UPON WHICH THE COURT MAY VACATE THE ARBITRATION AWARD

Even if the Court considers the merits of Black Hawk's Petition, it does not provide a valid basis for vacatur of the Award. As noted above, there is a strong presumption under the FAA in favor of enforcing arbitration awards. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). "Arbitration awards are subject to limited review to

avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 11 (2d Cir. 1993). The FAA "severely restricts the power of a court to vacate an award to cases involving fraud in the procurement of the award, misconduct, or arbitrators clearly exceeding their powers." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). The Second Circuit is "highly deferential to the arbitral award." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir. 2003); *see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC,* 648 F.3d 68, 78 (2d Cir. 2011) ("highly deferential to arbitrators"). Awards are confirmed so long as there is "a barely colorable justification for the outcome reached." *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 704 (2d Cir.1978).

### A. The Award Does Not Violate Public Policy Because the Arbitrator Reasonably Rejected Petitioners' "Untimeliness" Claim Based on His Review of the Arbitration Record

Historically, it has been held that courts may vacate an arbitral award where it is either irrational (*I/S Stavbourg [O. H. Meling, Mgr. v National Metal Converters, Inc.*, 500 F.2d 424, 431 (2d Cir. 1974)), or violates some strong public policy (*Paperworkers v Misco, Inc.*, 484 US 29, 43 (1987); *Town of Babylon v. Carson*, 111 A.D.3d 951, 976 N.Y.S.2d 501 (2d Dept. 2013)). The public policy exception is not limited to instances where the arbitral award violates positive law; however, the exception is narrow. *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 63 (2000). The public policy must be "explicit, well defined, and dominant." *Id.* at 62. When applying New York law, the scope of review is equally limited:

> Under New York law, courts may vacate arbitration awards only in some
> limited circumstances, namely, when the award [1] violates a strong public
> policy, [2] is irrational, or [3] clearly exceeds a specifically enumerated
> limitation on an arbitrator's power under CPLR § 7511(b)(1). (*Matter of
> New York State Correctional Officers & Police Benevolent Assn.*, 94
> N.Y.S.2d 321, 326 (1999)). 'A court cannot examine the merits of an

> arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be the better one' (*id*.). 'Indeed, even in circumstances where an arbitrator makes errors of law or fact, courts will not assume the role of overseers to conform the award to their sense of justice' (*id*.).

*MasTec N. Am., Inc. v. MSE Power Sys.*, 581 F.Supp.2d 321, 325-326 (N.D.N.Y. 2008). A court may intervene in arbitration on public policy grounds only in exceptional cases; it must be a case in which public policy considerations, embodied in statute or decisional law, prohibit, *in an absolute sense*, particular matters being decided or certain relief being granted by an arbitrator. *N.Y. City Transit Auth. v. Transp. Workers Union of Am., Local 100, AFL-CIO*, 99 N.Y.2d 1, 7, 780 N.E.2d 490, 492 (2002) (internal citations omitted). "Stated another way, the courts must be able to examine an arbitration agreement or an award *on its face* without engaging in extended fact-finding or legal analysis, and conclude that public policy precludes its enforcement." *Id.*

Even if the arbitrator misapplies substantive rules of law or makes an error of fact, unless one of the narrow statutory grounds for vacatur applies in that particular case, the award will not be vacated; a court is expressly precluded from reviewing factual or procedural errors. *See Chin v. State Farms Ins. Co.*, 73 AD3d 918, 919, 900 N.Y.S.2d 738, 740 (2d Dept. 2010) (denying petition to vacate an award that had evidentiary support in the record and was rationally based, despite arbitrator's failure to consider specific evidence). In addition, issues of procedural arbitrability (e.g., whether prerequisites such as time limits have been met) are generally for the arbitrator to decide *unless* there is an agreement by the parties to the contrary. Questions regarding procedural arbitrability "are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds*, *Inc.*, 537 U.S. 79, 84 (2002) ("the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability").

The presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Mem'l Hospital*, 460 U.S. at 24-25). As the Supreme Court explained in *Howsam*:

> [T]he Revised Uniform Arbitration Act of 2000 (RUAA), seeking to 'incorporate the holdings of the vast majority of state courts and the law that has developed under the [FAA],' states that **an 'arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled**.' RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp.2002). And the comments add that **'in the absence of an agreement to the contrary**, issues of substantive arbitrability . . . are for a court to decide and **issues of procedural arbitrability, i.e., whether prerequisites such as *time limits*,** notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, **are for the arbitrators to decide**.' *Id.*, § 6, comment 2, 7 U.L.A., at 13.

*Howsam*, 537 U.S. at 84-85 (emphasis added). *See also, e.g., United SteelWorkers of America, AFL-CIO-CLG v. St. Gobain Ceramics & Plastics, Inc*., 505 F.3d 417, 419 (6th Cir. 2007) (arbitrators are to determine issues of arbitrability with regard to time limits).

Here, the RPA's broad arbitration provision clearly and unambiguously delegates issues of arbitrability for determination exclusively by the arbitrator, including with respect to the application of any governing statute of limitations:  "[a]ll disputes… relating in any way to (1) the execution and delivery, construction or enforceability of [the RPA]…or (3) *any other breach or claimed breach of [the RPA] and the transactions contemplated herein* … shall be finally determined exclusively by binding arbitration…" (*see* Ex. 1 ¶13(B)). The plain terms of the RPA demonstrate that the parties intended to have issues of procedural arbitrability decided by the Arbitrator. Where the parties agree to submit the arbitrability question itself to arbitration, the court gives "considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Contec Corp. v. Remote Sol., Co.,* 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen, as here,

parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

"An arbitrator is not bound by principles of substantive law or rules of evidence, and may do justice and apply his or her own sense of law and equity to the facts as he or she finds them to be." *Erin Constr. & Dev. Co., Inc. v. Meltzer*, 58 A.D.3d 729, 730, 873 N.Y.S.2d 315, 317 (2009). Moreover, Neb. Rev. Stat. §25—2613(a) expressly provides: "[T]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." And, under New York law, CPLR § 7502(b) expressly authorizes an arbitrator to exercise their discretion with regard to statute of limitations issues where the claim sought to be arbitrated would have been barred if asserted in court:

> The failure [of a party] to assert such bar by such application [to the court] shall not preclude its assertion before the arbitrators, who may, in their sole discretion, apply or not apply the bar. Except as provided in [CPLR § 7511(b)], ***such exercise of discretion by the arbitrators shall not be subject to review by a court on an application to confirm, vacate or modify the award.***

CPLR § 7502(b) (emphasis added). Thus, even if the Arbitrator had misapplied or misinterpreted the statute of limitations governing AUCRA's arbitration claim, where – as in this instance - the grounds for an arbitrator's decision may be inferred from the facts of the case, the award must be confirmed. *See Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892-93 (2d Cir. 1985); *Prudential-Bache Sec., Inc. v. Caporale*, 664 F.Supp 72, 75 (S.D.N.Y. 1987).

Petitioners' argument that a violation of a statute of limitations amounts to a violation of public policy, simply by virtue of the fact that the rule of law is set forth in legislation, is without merit. Moreover, the two cases cited in support of Petitioners' argument are wholly inapplicable to the question of whether an arbitration award that purportedly misapplies a statute of

limitations would violate public policy. In *Haakinson & Beaty Co. v Inland Ins. Co*., 216 Neb. 426, 344 N.W.2d 454 (1984), the Nebraska Supreme Court held that a forum-selection clause contained in a labor and material payment bond executed by a contractor with a surety registered to do business in Nebraska, and which required suit to be brought where the construction project was situated, was in accordance with a provision of the Model Uniform Choice of Forum Act adopted by the Nebraska Legislature and, thus, was *not* invalid and unenforceable as contrary to public policy. *Id.* The other case cited by Petitioners, *State v Henderson*, 277 Neb. 240, 762 N.W.2d 1 (2009), vacated an award finding that the State Patrol did not have "just cause" for terminating an officer's employment based on his membership to the Ku Klux Klan because there was a clear public policy that the laws of Nebraska should be enforced without racial or religious discrimination, and that an individual who severely undermined reasonable public perception of the agency's commitment to such policy should not serve as a sworn officer. However, *Henderson* neglected to cite or discuss the unanimous U.S. Supreme Court decision with regard to a similar arbitral award in *Easter Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57 (2000), which framed the question presented as whether or not a voluntary contractual agreement to reinstate the employee would be unenforceable on public policy grounds. *See Id.* at 62-63. Applying the same standard here, if the Award had been a voluntary contract between the parties, it would not violate any clear public policy.

Black Hawk asserts in their Petition that they properly raised a statute of limitations defense in the arbitration, but fail to cite to any such argument stated in their Arbitration Submission papers. Rather, in that regard, Black Hawk's Arbitration Submissions, merely recount the chronology of invoice statements issued by AUCRA following the Notice of Cancellation dated August 2, 2010, and alleges that, after receiving the January 31, 2014 letter

from Mr. Silver threatening legal action, "[Black Hawk] heard nothing for approximately two years until the filing of th[e] arbitration in January 2016." (*See* Ex. 3 ¶¶ 16-26.) However, Black Hawk's Arbitration Submissions contain absolutely no mention whatsoever of any statute of limitations defense, let alone Neb. Rev. Stat. §25-205, upon which their Petition now relies. It remains unclear if Black Hawk ever in fact properly raised the statute of limitations issue during the arbitration proceeding. Nevertheless, the record *does* reveal that the Arbitrator considered Black Hawk's argument regarding the "untimeliness" of AUCRA's claim, and ultimately rejected that position. The Partial Award notes that Black Hawk's "argument regarding the 'untimeliness' of AUCRA's claim is unavailing because no conclusive evidence was submitted to show that AUCRA has ever abandoned its claim against Black Hawk." (*See* Ex. 7).[8]

Under Nebraska law,[9] a special statute of limitations will control and take precedence over a general statute of limitations because the special statute is a specific expression of legislative will concerning a particular subject. *Gering-Fort Laramie Irr. Dist. v. Baker*, 8 Neb. App. 1001, 1007, 606 N.W.2d 826, 833 (Neb. Ct. App. 2000), *revd*, 259 Neb. 840, 612 N.W.2d 897 (2000). One such special statute that Petitioners fail to discuss is Neb. Rev. Stat. § 25-216, which, in pertinent part, states that: "[i]n any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing

---

[8] Since Black Hawk did not formally raise the statue of limitations defense in their Arbitration Submissions, it is entirely possible that the Arbitrator was merely referring to Paragraph 26 of the Guarino Affidavit stating that there was a 2 year delay after receipt of the January 31, 2014 letter before AUCRA filed the Arbitration Demand, and that he did not actually consider the statute of limitations issue under Nebraska law. However, in failing to properly raise that legal argument during the arbitration itself, Black Hawk waived their right to now assert the same for the purposes of vacating the arbitration Award.

[9] Nebraska is the state where the instant action accrued because it is where AUCRA suffered the subject economic injury underlying the arbitration proceeding. Pursuant to CPLR § 202, Nebraska's statute of limitations law thus ultimately applies to this action on the facts, but not as a result of the Nebraska choice-of-law provision in the RPA. The Nebraska tolling provision under Neb. Rev. Stat § 25-216 applied to keep the 5 year statutory period running anew starting in 2012. The New York statute of limitations for contract actions is 6 years. CPLR § 213(2). Therefore, the arbitration proceeding and Award were timely under both New York and Nebraska law.

liability, debt or claim, or any promise to pay the same shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise…." *Id.* Accordingly, here, <u>Neb. Rev. Stat.</u> § 25-216 controls and takes precedence over the general statute of limitations in <u>Neb. Rev. Stat.</u> § 25-205.

A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to. *Snyder v. EMCASCO Ins. Co*., 259 Neb. 621, 611 N.W.2d 409 (2000). The RPA provides that "…if any of the Policies are cancelled or non-renewed prior to the end of the [3 year] Active Term ("Early Cancellation"), the Participant [Black Hawk] shall abide by the Early Cancellation terms set forth in Schedule 1." (*See* Ex. 1 ¶4). Here, the Petitioners' Workers' Compensation Insurance Policy issued by AUCRA's affiliate Continental Indemnity Company for the period August 20, 2009 to August 20, 2010, was cancelled on August 18, 2010 due to non-payment of premiums, triggering the RPA's Early Cancellation terms. (*See* Ex. 4). Thus, AUCRA's cause of action with respect to the RPA accrued only after the Petitioners breached their obligations under the Early Cancellation terms by failing to pay the fees and charges incurred as a result of the Policy's cancellation. Both parties included as an exhibit to their respective arbitration submissions the Premier Exclusive® Statement dated November 27, 2012, showing a credit to Black Hawk totaling $9,277. (*See* Ex. 5). Even if Black Hawk had properly raised a statute of limitations defense in their Arbitration Submission, which they did not, the undisputed facts show that the general 5 year statutory period restarted after the credit applied in 2012. Accordingly, the underlying arbitration initiated by AUCRA on January 25, 2016, and the resulting Final Award, are both timely under the governing statute of limitations period, which did not expire until 2017.

Arbitration awards should be construed to uphold their validity because a contrary course would result in the substitution of the judgment of the court for the judgment of the arbitrators chosen by the parties, and that would make the award itself the beginning, not the end, of litigation. *Delta Mine Holding Co. v. AFC Coal Properties, Inc.*, 280 F.3d 815, 823 (8th Cir. 2001). After reviewing the parties' Arbitration Submissions, the Arbitrator plainly considered Black Hawk's "untimeliness" argument and then rejected it based on an examination of the factual record that failed to reveal any reasonable grounds for barring AUCRA's claim. As such, there is nothing irrational or contrary to public policy in the findings and conclusions of the Arbitrator with respect to the statute of limitations issue. *See Motor Vehicle Acc. Indemnification Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214, 223, 674 N.E.2d 1349, 1354 (1996) (upholding award under arbitrary and capricious standard of review despite arbitrator's erroneous application of the statute of limitations when rejecting that defense).[10] Moreover, if the court were to now vacate the Award based on the Arbitrator's purported failure to rule that AUCRA's claims against Black Hawk were time barred, such a determination would be plainly contrary to the "explicit, well defined, and dominant" federal public policy strongly favoring enforcement of arbitration agreements and deference to arbitrators. *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 62 (2000). Vacatur is not intended to give the losing party in arbitration a "second bite of the apple." Therefore, this Court should find that the Award did not violate any clear public policy, and accordingly, that there is no legal basis for vacatur of the Award under FAA § 10 on these grounds.

---

[10] *See also, id.* at 223, 1335 (Under New York law, "[t]he Statute of Limitations may be an independent, per se ground to *vacate* an award *only* when asserted by a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate (*see*, CPLR § 7511[b][2][iv] ).").

**B. The Arbitrator Did Not Exceed His Powers When He Exercised His Discretion to Determine the Statute Of Limitations Issue and the Court Must Afford Deference to the Arbitrator's Award**

Even in the event that the Arbitrator's ruling on the statute of limitations issue was made in error – which Respondent submits was not the case – "[*t*]*he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."* Neb. Rev. Stat. § 25-2613(c) (emphasis added). As Black Hawk concedes in their Petition, one of those "very unusual circumstances" in which vacatur occurs is when arbitrators exceed their powers. *See* 9 U.S.C. § 10(a)(4); *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) ("Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all….and therefore did not 'exceed his powers'…."). In asserting that the Award violated public policy and exceeded the limits of the Arbitrator's powers, Black Hawk is essentially arguing for vacatur based on the Arbitrator's purported "manifest disregard of the law." In *Hall Street Associates, L.L.C. v. Mattel, Inc*., 552 U.S. 576 (2008), the Supreme Court restricted the grounds for vacatur of an arbitral award to those set forth in FAA § 10, and consequently, manifest disregard of the law is no longer an independent ground for vacatur. *Id.* at 584-85. However, the Court in *Hall Street* also recognized that "manifest disregard" might be understood as judicial shorthand for the statutory grounds listed in FAA § 10. *See id.* (citing circuit court decisions to show "manifest disregard" might refer either to the § 10 grounds collectively, or to the specific provisions authorizing vacatur where arbitrators are "guilty of misconduct" or "exceeded their powers"). As a result, while the Second, Fourth, Sixth, and Ninth Circuits have since held that arbitrators who manifestly disregard the law have "exceeded their powers" under FAA § 10(a)(4),[11] the Seventh,

---

[11] *See e.g.*, *Schafer v. Multiband Corp.*, 551 F. App'x 814, 819 n.1 (6th Cir. 2014); *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009);

Eighth, and Eleventh Circuits have confirmed after *Hall Street* that "manifest disregard" is no longer a valid basis for vacatur.[12] Accordingly, the Eighth Circuit cites to *Hall Street* for the proposition that "[a]n arbitration award may be vacated only for the reasons enumerated in the FAA." *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008). *See also, e.g.*, *Prime Therapeutics L.L.C. v. Omnicare, Inc.*, 555 F. Supp. 2d 993, 999 (D. Minn. 2008) (refusing to address a manifest disregard argument because the court's ability to vacate was limited to FAA § 10's exclusive grounds, and noting the Eighth Circuit treats manifest disregard as extra-statutory); *Wachovia Securities, Inc. v. Bonebrake*, 2009 WL 1916059, at *7 (Neb.Dist.Ct. June 19, 2009) (holding manifest disregard is not valid basis for vacatur, and even if it was, movant did not meet burden of proving arbitrators knew of and intentionally ignored the applicable statute barring award of attorney's fees, rather than misinterpreting or misapplying it, by showing that the award citied to the statute without further explanation). Thus, under Nebraska law, Petitioners argument that the Arbitrator exceeded his powers by ignoring the applicable statute of limitations would almost certainly fail.

In the Second Circuit, review of an arbitral award for manifest disregard of the law is "severely limited." *Wallace v. Buttar,* 378 F.3d 182, 189 (2d Cir. 2004). "A party seeking to vacate an arbitration award on the basis of manifest disregard of the law must satisfy a two-pronged test, proving that: (1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 110-11

---

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008), *overruled on other grounds*, 559 U.S. 662 (2010).

[12] *See e.g., Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 284–85 (7th Cir. 2011); *Medicine Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010); *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1323–24 (11th Cir. 2010).

(2d Cir. 2006). "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Wallace,* 378 F.3d at 190 (internal quotation marks and emphasis omitted); *see also Chelsea Grand LLC v New York Hotel & Motel Trades Council, AFL-CIO,* 16 CIV. 05301 (PAC), 2017 WL 1102699, at *3 (S.D.N.Y. Mar. 23, 2017) (finding arbitrator did not manifestly disregard any explicit, well defined, and clearly applicable law dictating that the CPLR's time limitations applied to arbitration proceedings). "It is not enough that the moving party provide proof that the arbitrator was aware of the governing legal principle; there must also be a showing of intent." *Westerbeke Corp. v. Daihatsu Motor Co. Ltd.*, 304 F.3d 200, 217 (2nd Cir. 2002). In order to find the requisite intent, Petitioners must show that the Arbitrator's decision "strained credulity" or did not rise to the standard of "barely colorable." *Id.* at 217-18; *see also Wachovia Securities, Inc.*, 2009 WL 1916059, at *8 (finding petitioner failed to prove the arbitration panel's intent to disregard the law, and similar to Black Hawk here, instead asked the court to infer intent based on petitioner's own application of the facts to the proposed governing statute of limitations). Even then, "[t]he question under [Section 10(a)(4)] is 'whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'" *Stolt-Nielsen*, 559 U.S. at 694 (quoting *DiRussa v. Dean Witter Reynolds, Inc*., 121 F.3d 818, 824 (2d Cir. 1997)).

Under New York law, a choice-of-law clause is construed as choosing only the applicable substantive law, not the applicable limitation period. *Cafferty v. Scotti Bros. Records, Inc.*, 969 F.Supp. 193, 203 (S.D.N.Y. 1997); *see also Ins. Co. of N. Am. v. ABB Power Generation, Inc.*, 925 F.Supp. 1053, 1059 (S.D.N.Y. 1996) ("Relying on th[e] characterization of statutes of limitations as procedural, New York courts do not apply contractual choice of law clauses when

determining what statute of limitations applies") (citations omitted)); *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 415–16, 927 N.E.2d 1059, 1061 (2010) (affirming that a Delaware choice-of-law clause could not be read to encompass or require application of Delaware's statute of limitations to bar disputed claims where there was no such express intention in the agreement). Accordingly, the RPA's generic choice-of-law provision does not mandate that Nebraska's statute of limitations be applied to AUCRA's claims. Given that there are no citations to applicable case law relied upon by the parties in any of the arbitration records available, it is entirely possible that the Arbitrator appropriately exercised his discretionary authority when evaluating Petitioners argument by choosing to apply either the 6 year statute of limitations under New York law or some other relevant statutory provision.

Within the framework of FAA § 10's requirements for vacatur, manifest disregard of the law involves more than an erroneous application or interpretation of the law; the review is highly deferential and such relief is very rare. *Wallace*, 378 F3d at 193; D*uferco Intl. Steel Trading v T. Klaveness Shipping A/S*, 333 F3d at 389; *Westerbeke*, 304 F3d at 218; *InterChem Asia 2000 Pte. Ltd. v Oceana Petrochemicals AG*, 373 F.Supp.2d at 355. It will be found only where the arbitrator "knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Westerbeke*, 304 F3d at 217.

The Petition, however, is devoid of any evidence of any of these circumstances or authority as to the Arbitrator willfully ignoring the statute of limitations issue.  Petitioners have not demonstrated that the statute of limitations argument was properly raised in the arbitration in the first place, or that the Arbitrator was clearly aware of the Nebraska statute they now belatedly rely on. Further, the Arbitrator's rejection of Black Hawk's "argument regarding the

'untimeliness' of AUCRA's claim" more than satisfies the threshold "barely colorable" interpretive standard of review applied by this Court when evaluating alleged manifest disregard of the law under FAA § 10(a)(4). Therefore, given the Petitioners' failure to identify any legitimate instances in which the Arbitrator exceeded his authority, the Court should deny the Petition to vacate the Award.

### III. THE COURT MUST CONFIRM THE AWARD BECAUSE THERE IS NO STATUTORY BASIS UPON WHICH IT MAY BE VACATED

Section 9 of the FAA governs the enforcement of arbitral awards under federal law and, in pertinent part, provides that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then *at any time within one year after the award is made* any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon *the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10 & 11]*. If no court is specified in the agreement of the parties, then such application may be made to the United States Court in and for the district within which such award was made.

9 U.S.C. § 9. A judgment entered pursuant to FAA § 9 has "the same force and effect" as "a judgment in an action," and "may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13.  To confirm an arbitral award under FAA § 9, the parties must agree to have the award entered via a judgment of the court. The Second Circuit has held this prerequisite is satisfied where a contract provides for arbitration pursuant to AAA rules, thereby incorporating by reference AAA Commercial Arbitration Rule 52(c): "[p]arties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." *See also, e.g., Idea Nuova, Inc. v. GM Licensing Group, Inc.*, 617 F.3d 177, 180–182 (2d Cir. 2010) (holding parties agree to judicial confirmation of final arbitral awards when they agree to be

bound by AAA Rules, which themselves provide for such confirmation); *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 745 (8th Cir. 2003) (recognizing reference to AAA rules as adequate substitute for explicit statement that parties intend binding arbitration); *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 983 (5th Cir. 1995) (holding a reference to AAA rules indicates "that resort to AAA arbitration will be deemed both binding and subject to entry of judgment unless the parties expressly agree otherwise").

Where the parties have so agreed, an arbitral award is entitled to "strong deference*," Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007), and confirmation is ordinarily "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006); *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984). The arbitrator's rationale for an award need not be explained, and the award should be confirmed, "if a ground for the arbitrator's decision can be inferred from the facts of the case." *Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 121 (2d Cir. 1991). Only **"a barely colorable justification"** for the outcome reached by the arbitrator is necessary to confirm an award. *D.H. Blair & Co., Inc.,* 462 F3d at 110.

Even greater deference is given to the arbitrator's award under Nebraska law, and courts are not required to perform even a cursory review of the arbitrator's decision-making rationale. Rather, unless a party has timely moved to vacate, modify, or correct the arbitral award pursuant to Sections 25-2613 (vacatur) and/or 25-2614 (modification), upon an application under Neb. Rev. Stat. § 25-2612, a court *must* confirm the award within 60 days. And, under Neb. Rev. Stat. § 25–2615, "[u]pon the granting of an order confirming, modifying, or correcting an award, a judgment or decree shall be entered in conformity therewith and should be enforced as any other

judgment or decree." Accordingly, the NUAA does not permit a court to exercise discretion regarding a request for confirmation that is made where there has been no application for vacatur or modification, or in this instance, where such application is untimely. *See MBNA Am. Bank, N.A. v. Hansen*, 16 Neb. App. 536, 541, 745 N.W.2d 609, 614 (2008).

As a practical matter, the only defenses that can be raised in opposition to a motion to confirm an arbitral award are those same grounds set forth in FAA § 10 for vacatur, and FAA § 11 for modifying and correcting awards. 9 U.S.C. §§ 9-11. However, the Second Circuit has previously held "that grounds for vacating an arbitration award [under FAA § 12] may not be raised as an affirmative defense after the period provided in the appropriate statue of limitations governing applications to vacate an arbitration award has lapsed..." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (finding affirmative defenses to confirmation of LMRA award time-barred under the CPLR, versus FAA's 3 month period, but declining to apply New York case law that allowed such defenses to be raised after expiration of the statutory period in conflict with underlying purpose of arbitration mechanism). Thus, a party who fails to timely challenge an arbitral award also forfeits any affirmative defenses that could have been raised in response to a petition to confirm that award. *Porter v. Thompson Roofing & Sheet Metal Co.*, 242 F.3d 367 (2d Cir. 2000); *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). As the Eighth Circuit explained, this principle is "intended to enhance the speed and effectiveness of arbitration, to provide fair review of the arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award." *Trustees of the N.Y. City Dist. Council of Carpenters Pension Fund v. High Performance Floors Inc.*, No. 15 CIV. 0781 (LGS), 2016 WL 3194370, at *4 (S.D.N.Y. June 6, 2016), *reconsideration denied*, No. 15 CIV. 0781 (LGS), 2016

WL 3911978 (S.D.N.Y. July 15, 2016) (quoting *Turner v. United Steelworkers of Am., Local 812*, 581 F.3d 672, 675-676 (8th Cir. 2009)). Likewise, under both New York and Nebraska State laws, upon denying a petition to vacate or modify an arbitration award, the court must confirm the award. *See* CPLR § 7511[e]; Neb. Rev. Stat. § 25-2613(d) ("If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award."). *See also Klein v. GEICO Gen. Ins. Co.*, 109 AD3d 825, 826, 971 N.Y.S.2d 58, 59 (2d Dept 2013) (holding that, given the denial of the petition to vacate, the award must be confirmed and an appropriate judgment entered under CPLR §§ 7511[e] and 7514[a]).

The parties' Agreement plainly satisfies the requirements of FAA § 9 because the RPA mandates that "[a]ll arbitration proceedings shall be conducted… in accordance with the rules of the [AAA]." (*See* Ex. 1 ¶13(I)). The RPA further provides that the Arbitrator's award "shall be binding and conclusive on the parties," and, even more to the point, that "[j]udgment upon the award…may be entered by any court of competent jurisdiction in Nebraska or application may be made in such court for judicial acceptance of the award and an order of enforcement *as* the law of Nebraska may require or allow." (*See* Ex. 1 ¶ 13(G)-(H)).[13] In addition, the filing of AUCRA's Cross-Petition to confirm the arbitration Award is well within the one year statute of limitations and is, therefore, timely under FAA § 9. Whereas, Black Hawk's Petition to vacate is not only untimely pursuant to FAA § 12, but they also fail to present any valid arguments permitting vacatur of the Award under the applicable statutory provisions and/or the common-law grounds for violations of public policy and manifest disregard of the law.  FAA § 10.

---

[13] Although the RPA provides for arbitration in Tortola, British Virgin Islands, and for enforcement of arbitral awards in Nebraska courts, AUCRA initiated the underlying arbitration proceeding in New York, New York, out of consideration for the convenience to Petitioners, who are headquartered in Hicksville, New York, and for the purpose of facilitating their participation in the arbitration.  Accordingly, venue is proper in this District because it is where the arbitration took place and where the Award was issued. To the extent necessary, AUCRA hereby consents to the jurisdiction and venue of this Court with regard to the pending Petition and Cross-Petition to Confirm Arbitration Award and for the purpose of resolving this dispute expeditiously and efficiently.

AUCRA further asserts that, even if Black Hawk's Petition were timely and their alleged grounds for vacatur were not time-barred, they would still be unable to identify any legitimate statutory grounds warranting a denial of AUCRA's Cross-Petition for confirmation. *Id.* at § 9. Therefore, the Court should grant Respondent's Cross-Petition to confirm the Award.

## CONCLUSION

Based on the foregoing, the Respondent, Applied Underwriters Captive Risk Assurance Company, Inc., respectfully requests that this Court deny and/or dismiss, in its entirety, Black Hawk's Petition to vacate the arbitration Award, and grant the Cross-Petition for an Order: (1) confirming the "Final Award of Arbitrator" issued on January 27, 2017 in *Applied Underwriters Captive Risk Assurance Co. v. Black Hawk, Inc. and Mustang Enterprises, Inc.* (AAA ICDR Case No. 01-16-0000-2552); (2) directing judgment to be entered thereon; (3) denying and dismissing Black Hawk's Petition to Vacate with prejudice; (4) awarding attorneys' fees in connection with this matter pursuant to 28 U.S.C. § 1927; and (5) for such other and further relief as the Court deems just and proper.

Dated: July 10, 2017

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By:_____/s/ Claire M. Hankin_____
Claire M. Hankin (CH2522)
*Attorneys for Respondent,*
APPLIED UNDERWRITERS CAPTIVE
RISK ASSURANCE COMPANY, INC.
1133 Westchester Avenue
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Claire.Hankin@wilsonelser.com
Our File No.: 12548.00069

30

## CERTIFICATE OF SERVICE

I, Claire M. Hankin, hereby certify that on this 10th day of July 2017, a true and correct copy of the foregoing document was filed through the ECF system, and the document will be sent electronically to the registered participates, and paper copies will be served via first class mail on those indicated as non-registered participants and the following counsel of record:

> Stephen C. Cunningham, Esq.
> Jan A. Marcus, Esq.
> Gloria Djelevic, Esq.
> KEIDEL, WELDON & CUNNINGHAM, LLP
> *Attorneys for Petitioners*
> 925 Westchester Avenue, Suite 400
> White Plains, New York 10604
> Tel: (914) 948-7000
> Fax: (914) 948-7010
> Scunningham@kwcllp.com
> jmarcus@jwcllp.com
> gdjelevic@kwcllp.com

                            /s/ Claire M. Hankin
                            Claire M. Hankin
                            *Attorneys for Respondent*