**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLACK HAWK INC. and MUSTANG ENTERPRISES, INC.,

        Petitioners,

-vs-

APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC.,

        Respondent.

Civil Action
No.: 1:17-cv-3973 (AKH)

## PETITIONERS' REPLYMEMORANDUM OF LAW IN SUPPORT OF PETITION TO VACATEARBITRATION AWARD AND IN OPPOSITION TO CROSS-PETITION TO CONFRIM ARBITRATION AWARD

KEIDEL, WELDON & CUNNINGHAM, LLP
Stephen C. Cunningham
Jan A. Marcus
*Attorneys for the Petitioners*
*Black Hawk, Inc. and Mustang Enterprises, Inc.*
925 Westchester Avenue – Suite 400
White Plains, New York 10604
Tel: (914) 948-7000
Fax: (914) 948-7010
scunningham@kwcllp.com

# TABLE OF AUTHORITIES

| CASES | PAGES |
|---|---|
| ***Big John's Billards v. State*** | |
| 283 Neb. 496 (2012) ............................... | |
| *Damrow v. Murdoch*....................... | |
| 15 Neb. App. 920 (2007) | |
| *Eastern Associated Coal Corp. v. United Mine Workers* ............ | |
| 531 U.S. 57 (2000) | |
| *Howsam v. Dean Witter Reynolds, Inc*................................ | |
| 537 U.S. 79 (2002) | |
| *Lake v. Piper, Jaffray & Hopwood, Inc.* ................................. | |
| 212 Neb. 570 (1982) | |
| *Rocket Jewelry Box, Inc v. Noble Gift Packaging, Inc.* ................ | |
| 157 F. 3d 174 (2d Cir. 1998) | |
| *State v. Henderson* ........................................... | |
| 277 Neb. 240 (2009) | |
| *The Haakinson & Beatty Co. v. Inland Insurance Co.* .................. | |
| 216 Neb. 426 (1984) | |
| *T.S. McShane Co., Inc. v. Dominion Constr. Co*........................... | |
| 203 Neb. 318 (1979) | |
| *W.R. Grace & Co. v. Rubber Workers* ........................................ | |
| 461 U.S. 757 (1983) | |

## STATUTES AND OTHER AUTHORITIES

| | |
|---|---|
| 9 U.S.C. § 10 .................................................................. | 9, 10 |
| 17 Am.Jur.2d Contracts § 177 ............................................. | 8 |
| CPLR § 2103(b)2 ............................................................. | 15 |

    Neb. Rev. Stat § 25-205 …………………………………………… 8

    Neb. Rev. Stat § 25-2613(a) ………………………………………….. 10

    Neb. Rev. Stat § 25-216 ……………………………………………… 11, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLACK HAWK INC. and MUSTANG ENTERPRISES, INC.,

                Petitioners,

-vs-

APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC.,

                Respondent.

Civil Action No.: 1:17-cv-3973 (AKH)

**PETITIONERS' REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD AND IN OPPOSITION TO CROSS-PETITION TO CONFRIM ARBITRATION AWARD**

**PRELIMINARY STATEMENT**

The Petitioners Black Hawk, Inc. and Mustang Enterprises, Inc. ("Petitioners") submit the within in Reply and in further support of Petitioners' Verified Petition to Vacate Arbitration Award dated April 27, 2017 ("Petition") and in Opposition to the Verified Cross-Petition to Confirm Arbitration Award dated July 10, 2017 ("Cross-Petition") filed by the Respondent Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA" or "Respondent"). As set forth more fully below, and as set forth in the in Petitioners' initial moving papers, the underlying arbitration award was founded upon a clear violation of existing law and public policy. Consequently, the Petition should be granted and the Cross-Petition should be denied and dismissed.

**UNDERLYING GENERAL FACTS**

The dispute between the parties arises from the circumstances surrounding certain insurance coverage that AUCRA procured on behalf of the Petitioners. The full factual background of the underlying arbitration is set forth in detail in the Petitioners' Submission to

1

the arbitrator, annexed as **Exhibit A** to the accompanying Declaration of Jan A. Marcus, Esq. dated August 25, 2017 (hereinafter "Marcus Dec.").

For purposes of summary in the context of this Memorandum of Law, the following are relevant facts: The Petitioners are located in Hicksville, New York and are both engaged in the business of interior demolition and removal of commercial structures. *See* Affidavit of Thomas Guarino, President of Black Hawk Inc. and Vice President of Mustang Enterprises, Inc., dated September 26, 2016 which was submitted to the arbitrator (hereinafter referred to as the "Guarino Aff."), and which is annexed as **Exhibit B** to the Marcus Dec. Consequently, it was necessary for Petitioners to maintain Workers' Compensation Insurance coverage for their employees in accordance with the requirements of New York law. *See* Guarino Aff. ¶¶ 2, 3.

In 2008, a program was introduced to Petitioners through their insurance broker ("the Program") which Petitioners understood to be created and administered through AUCRA, or one of AUCRA's related companies. *See* Guarino Aff. ¶ 4. AUCRA had instituted a certain risk-sharing program involving reinsurance, in which the risk associated with Workers' Compensation coverage would be pooled among participants to theoretically lower the premiums charged for such coverage. *See* Guarino Aff. ¶ 5. The parties thereafter entered into a Reinsurance Participation Agreement dated August 20, 2008 ("RPA") which is the operative agreement for purposes of this matter. *See* Ex. 3 to Guarino Aff.

However, over the succeeding two year time period, the premiums on the subject insurance coverage changed several times without a clear explanation by AUCRA. The Petitioners received nothing more than vague and confusing explanations as to why the premiums were increasing in the middle of a policy period. *See* Guarino Aff. ¶ 14. Eventually, AUCRA cancelled the subject insurance purportedly for non-payment of premiums.

The coverage period of the Worker's Compensation policy that was cancelled ran from August 20, 2009 to August 20, 2010. *See* Notice of Cancellation dated August 2, 2010 annexed as **Exhibit C** to the Marcus Dec. Between June 2011 and December 2013, Petitioners received many statements from AUCRA purporting to show charges in varying amounts, for which Petitioners supposedly owed payment, but Petitioners never received sufficient explanations for these fluctuating balances despite repeatedly seeking clarification and further information from AUCRA. *See* Guarino Aff. ¶¶ 19-24.

Petitioners next received a letter from Mr. Jeffrey A. Silver, a lawyer representing the AUCRA, dated January 31, 2014. *See* Jeffrey Silver Letter and Attachment annexed to the Marcus Dec. as **Exhibit D.** That letter, sent approximately 3 ½ years after the Notice of Cancellation, threatened legal action and attached a draft Complaint to be filed in the state court in the State of Nebraska within 10 days if the Petitioners did not pay in excess of $178,000.00 to AUCRA . Despite that threat and the inclusion of a draft complaint with the Silver correspondence, Petitioners heard nothing from AUCRA for approximately two more years until the filing of the demand for arbitration in January 2016. *See* Guarino Aff. at ¶ 26.

## THE ARBITRATION AWARD AND THE PETITION

AUCRA commenced the underlying arbitration on January 25, 2016. A copy of the AUCRA's September 23, 2016 Submission to the arbitrator, without supporting Affidavits and related Exhibits, is annexed as **Exhibit E** to the Marcus Dec. As stated previously, the Petitioners' Submission of the same date is annexed as **Exhibit A** to the Marcus Dec. The claim was premised upon breach of contract claims for additional insurance premiums due for the coverage year 2009 – 2010. No federal question or statue was involved. After the exchange of

documentation between the parties, the arbitration was conducted without a hearing and was decided on the written submissions of the parties.

The arbitrator issued a "Partial Final Award" dated December 5, 2016. The Partial Final Award is annexed as **Exhibit F** to the Marcus Dec. The arbitrator then issued a subsequent "Final Award of Arbitrator" dated January 27, 2017, which awarded fees and costs to AUCRA and which incorporated by reference the reasons given in the Partial Final Award for the arbitrator's decision. The Final Award of Arbitrator is annexed as **Exhibit G** to the Marcus Dec. In the Final Award of Arbitrator (Ex. G to Marcus Dec.), the arbitrator states the he "clearly delineated the reasons for my decision" in the Partial Final Award (Ex. F to Marcus Dec.). The Final Award of Arbitrator was not forwarded to the parties through the American Arbitration Association until January 30, 2017. A copy of the transmittal email correspondence is annexed as **Exhibit H** to the Marcus Dec.

The reasons for the arbitrator's decision included the arbitrator's rejecting the Petitioners' legal argument that AUCRA's claims were time barred by the applicable statute of limitations because, according to the arbitrator, "no conclusive evidence was submitted to show that AUCRA has ever abandoned its claim against [Petitioners]." *See* Exs. F and G to Marcus Dec.

The RPA sets forth in Section 13(C) that disputes between the parties shall be submitted to arbitration. Section 13(I) of the RPA provides that arbitration proceedings shall be conducted in accordance with the rules of the American Arbitration Association. Section 16 of the RPA states that the RPA "shall be exclusively governed by and construed in accordance with the laws of Nebraska . . ." As pointed out in the Petition, the statute of limitations within which AURCA could bring its breach of contract claim was 5 years from the date of breach and rendered the

institution of the arbitration in January 2016 untimely under Nebraska law. The Respondent does not seriously contest that fact.

In addition, the arbitrator's improper finding that the statute of limitations defense was not viable because the there was no evidence that AUCRA *"abandoned"* its breach of contract claims, event thought such claims were not timely instituted and the arbitrator's reasons for rejecting the statute of limitations defense in effect imposed an illegal requirement under the law.

Recognizing that the arbitrator's award was fatally defective premised upon the arbitrator's stated grounds for rejecting the fact that AUCRA's claims were facially time-barred under applicable law, the Petitioners filed the Petition in the Supreme Court of the State of New York on April 27, 2017. *On that same date, April 27, 2017,* the Petitioners caused the Petition to be served upon counsel for the Respondent by depositing the Petition with supporting documents in the United States mail. *See* Affidavit of Service annexed as **Exhibit I** to the Marcus Dec. The Respondent conveniently ignores that fact throughout its Memorandum of Law. The Respondent also has not challenged New York as an appropriate venue for the Petition.

The Respondent thereafter removed this matter to federal court and then filed the Cross-Petition seeking to confirm the arbitration award. AUCRA had taken no action to confirm the subject arbitration award prior to responding to the Petition filed by the Petitioners.

Since the reasoning given by the arbitrator for rejecting the statute of limitations defense is premised upon an abrogation of clear law and public policy, and since the underlying claims by AUCRA are in fact time-barred, this matter presents one of the situations where an arbitration award must be vacated by a reviewing court.

**LEGAL ARGUMENT**

No matter how desperately the Respondent endeavors to avoid the fatal deficiencies of the basis upon which the arbitrator rejected the statute of limitations defense, the fact of the matter is that the underlying claims are indeed time-barred under the applicable law of the State of Nebraska, which is the governing law pursuant to the very agreements relied upon and drafted by the Respondent. Indeed, the Respondent's arguments opposing the vacating of the subject award and in support of confirming the award do not challenge that application of the Nebraska statute of limitations is appropriate and are no more than a pastiche of misplaced and overwrought contentions. Further, the Respondent's claim that this proceeding is untimely under provision the three month time limit for making motions to vacate an arbitration award under the Federal Arbitration Act ("FAA") is meritless. Accordingly, this Court should reject Respondent's arguments and grant the Petition.

### A. An Award Cannot Stand When a Valid Defense is Rejected Upon Grounds That Impose An Illegal Requirement on a Party

As pointed out previously, the RPA mandates that Nebraska law applies in the RPA's interpretation and enforcement. The applicable statute of limitations for contract actions in Nebraska is 5 years from the date of breach. It is undisputed that the date of breach, at best for the Respondent, occurred when the underlying Workers' Compensation Insurance policy was cancelled for non-payment of premiums – i.e., August 2, 2010. *See* Ex. C to Marcus Dec. Accordingly, the statute of limitations ran on the Respondent's claims in the underlying arbitration on August 2, 2015. The arbitration was commenced on or about January 25, 2016. Prior to the commencement of the demand for arbitration, the Respondent let years lapse between the time of any breach and the time legal action was threatened (3 ½ years) and then

between the time of that threat and the time an action was commenced (2 years). Accordingly, the arbitration was facially time-barred under Nebraska law.

The arbitrator would have had a difficult enough time justifying a rejection of that defense under the facts stated above for any reason. However, what the arbitrator did in his decisions was to base a rejection of the statute of limitations defense *solely* upon a self-created additional burden that it was necessary for there to be proof that the Respondent intended to "abandon" its claims against the Petitioners before such a defense would be viable. While there is substantial leeway accorded an arbitrator's ruling, there is nothing contained in any body of law – whether the state law of Nebraska or the FAA or the rules of the American Arbitration Association – which permits in any manner an arbitrator to create his own law and ignore what is tantamount to public policy.

As set forth in the Petition, judicial review of an arbitrator's award is in fact circumscribed and "[s]trong deference is due an arbitrative tribunal." *State v. Henderson*, 277 Neb. 240, 243-4 (2009); *Damrow v. Murdoch*, 15 Neb. App. 920, 926 (2007). "[A] court may not overrule an arbitrator's decision simply because the court believes that its own interpretation of the contract, or the facts, would be the better one." *Id.* at 243. However, a court may refuse to enforce an arbitration award that is contrary to a public policy that is explicit, well defined, and dominant. *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 62 (2000); *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983). Such a public policy must be ascertained by reference to laws and legal precedents, not from general considerations of supposed public interests. *Id.*; *Henderson, supra*, at 250. The arbitration award need not itself violate positive law to be unenforceable as against public policy. *Henderson, supra*, 277 Neb. at 250.

What constitutes public policy must be determined from a consideration of the federal and state Constitutions, relevant statutes, the decisions of the courts, and the course of administration, and not by the varying opinions of laymen, lawyers, or judges. *See e.g.* 17 Am.Jur.2d Contracts § 177. Public policy must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Eastern Associated, supra*, 531 U.S. at 62 (internal citations omitted). Constitutional or statutory provisions, absent an infirmity in the law itself, govern what is the public policy. That is to say, where the lawmaking power speaks on a particular subject over which it has constitutional authority to speak, *the public policy in such a case is what the statute provides*. *The Haakinson & Beaty Co. v. Inland Insurance Co.*, 216 Neb. 426, 429 (1984) (emphasis added).

Neb. Rev. Stat. 25-205 provides, *inter alia*, that "an action upon a specialty, or any agreement, contract, or promise in writing, or foreign judgment, can only be brought within five years." Pursuant to the holding of the Haakinson court, Nebraska's statute of limitations for bringing an action upon a contract is public policy. Therefore, for an arbitrator to ignore the applicable statute of limitations in rendering his decision, or to impose an additional requirement that a party bringing a claim need to have intended to "abandon" its claims in order for the Nebraska statute of limitations to apply is a violation of public policy.

Although Respondent spends significant time in its Memorandum of Law attempting to refute the validity of "manifest disregard of the law" as grounds for vacatur, such an argument has not been advanced by Petitioners. *See* Resp. Memo of Law pp. 22-26. Rather, it is upon the bases of the award violating public policy and the arbitrator exceeding the scope of his powers that Petitioners seek to vacate the award. And under those theories, it is clear that the arbitrator violated the law in attempting to impose a fictitious burden on the Petitioners in regard to the

statute of limitations defense. *See* § 10 of the FAA, 9 U.S.C. § 10(a)(4), which states that a court may vacate an award where the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Respondent appears to overlook the explicit definition of public policy laid out by Nebraska's state courts, which explain with specificity that a codified rule is, automatically, considered public policy. *See, e.g., Haakinson, supra,* at 429. Although Respondent proclaims, somewhat absurdly, that "Petitioners' argument that a violation of a statute of limitations amounts to a violation of public policy, simply by virtue of the fact that the rule of law is set forth in legislation, is without merit." (Resp. Memo at p. 17), the explicit language in *Haakinson, supra,* to the contrary provides the exact basis demonstrating the merit of Petitioners' argument.

Respondent further misapprehends the purpose of Petitioners reliance upon the *Haakinson* and *Henderson* decisions and argues that the facts of both cases are inapposite here. Resp. Memo at p. 17. However, Petitioners never suggested that the underlying facts of *Haakinson* and *Henderson* are precisely similar to those of the instant matter. Instead, both cases were cited for specific language pertaining to the definition of public policy, which may be applied to *any* set of facts. As applied to the set of facts in this case, it is an unequivocal certainty that Nebraska's codified statute of limitations does constitute clear public policy.

The issue examined in *Eastern Associated, supra,* is similarly misinterpreted by Respondent, who suggests that the question before the court in that case was a broad assessment of whether a "voluntary contractual agreement to reinstate the employee would be unenforceable and public policy grounds," and that "[a]pplying the same standard here, if the Award had been a voluntary contract between the parties, it would not violate any clear public policy." Resp. Memo at p. 18. However, the *Eastern Associated* Court was not examining the broad topic of

9

any voluntary agreement between the parties, but rather the case-specific "contractual agreement to reinstate [an employee] with specified conditions," and whether that exact agreement ran "contrary to an explicit, well defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests." *Eastern Associated, supra* 531 U.S. at 62-63. The Award here, of course, was *not* a voluntary contract between the parties, so whether or not it would violate public policy if interpreted as such is a completely irrelevant hypothetical.

Respondent's lengthy and circuitous arguments against manifest disregard of the law further ignore the fact that flagrantly ignoring established public policy falls not within the category of "manifest disregard" but within the scope of impermissibly exceeding the scope of authority granted to an arbitrator. Neb. Rev. Stat. 25-2613(a) provides, *inter alia*: "Upon application of a party, the court shall vacate an award when . . . (3) the arbitrators exceeded their powers . . ." and is not dissimilar to the provisions of 9 U.S.C. § 10(a)(4). In this matter, the arbitrator exceeded his powers when he chose to reject the statute of limitations argument that was properly raised by the Petitioners by imposing an additional burden which is non-existent under the law. A statute of limitations is thus necessarily a part of defined public policy to which the arbitrator was bound to uphold and enforce.

In addition, it is only incumbent upon a party to plead the statute of limitations as an affirmative defense when the complaint does not, on its face, demonstrate that it is barred by the statute. *See Lindner v. Kindig, 285 Neb. 386, 393 (2013)*, holding:

> The general rule is that where a complaint does not disclose on its face that it is barred by the statute of limitations, a defendant must plead the statute as an affirmative defense, and, in that event, the defendant has the burden to prove that defense. If,

> however, the complaint on its face shows that the cause of action is time barred, the plaintiff must allege facts to avoid the bar of the statute of limitations and, at trial, has the burden to prove those facts.

Claimant's submission clearly conveys the alleged date the loss occurred and is thus demonstrably time-barred by the Nebraska statute of limitations.

Respondent attempts to evade the applicable statute of limitations with the unsupportable claim that a special statute of limitations applies here, citing Neb. Rev. Stat. § 25-216, which provides, in part: "In any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise[.]"

Respondent proclaims that because AUCRA provided a statement to Petitioners in November 2012 that showed a credit to Petitioners, Respondent thereby tolled the applicable statute of limitations. This argument is without merit. Respondent's position is premised upon Respondent's own action in sending the statement reflecting a credit to Petitioners' account. Petitioners' acknowledging receipt of that statement is not equivalent an acknowledgement of or promise to pay the debt in its entirety, nor is it an acknowledgment of any obligation to pay an outstanding debt.

Furthermore, as articulated by the Nebraska Supreme Court, partial payment of a debt does not have the effect of tolling the statute of limitations, unless payment is made under circumstances which justify the inference that the debtor recognizes the whole debt as an existing liability. *T.S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318 (1979). Neb. Rev. Stat.

11

§ 25-216 does not apply to this case. The applicable statute of limitations is five years, and Respondent's action is thereby time-barred.

Further, statutes of limitation are not, as Respondent urges, a "prerequisite[s], such as time limits" *See* Resp. Memo at p. 16, quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002). The nature of the time limits to which the *Howsam* Court referred is that of pre-action administrative requirements that would trigger arbitrability, not whether codified statutes of limitations are applicable. *See Howsam*, at 84, citing to a case holding that "an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration" (internal citations omitted). As pointed out previously, the Final Award of Arbitrator, incorporating by reference the reasoning stated in the Partial Final Award of Arbitrator, brushed aside Petitioners' statute of limitations argument with a single sentence: "The argument regarding the 'untimeliness' of AUCRA's claim is unavailing because no conclusive evidence was submitted to show the AUCRA has ever abandoned its claim against Black Hawk." *See* Exs. F and G to Marcus Dec.

Clearly, whether or not AUCRA ever "abandoned" its claim against the Petitioners is irrelevant to the statute of limitations analysis. The statute of limitations provides a bright line for the amount of time a party has to commence an action sounding in a particular legal theory. In this case, Nebraska's statute of limitations for commencing an action sounding in breach of contract is five years from the alleged breach. The law does not require any demonstration of "abandoning" a potential claim; the law only requires that the action be commenced within a certain time. The Respondent here failed to commence the underlying arbitration within the statutorily provided amount of time, and therefore, is time-barred from recovering on its submitted claims.

The arbitrator's actions in inserting a new legal threshold and using it to reject an otherwise valid statutory argument far exceeds the scope of the powers granted to an arbitrator. As discussed *supra*, rules codified by statute are judicially recognized as constituting part of a state's "public policy." To allow an arbitrator to unilaterally dispense with the legal requirement and not abide by the public policy of any jurisdiction would be in direct contravention of established case law and would defeat both the expectations and the purpose of the arbitration system.[1]

### B. Service of the Petition Was Timely Made

Stripped of its considerable excess verbiage, the Respondent's primary contention in its Cross-Petition is that the Petitioners failed to serve notice of the Petition to Vacate within 3 months from the date the Final Award was filed or delivered as set forth in 9 U.S.C. § 12. *See e.g.* Resp. Memo at pp. 11-13. Respondent's argument that service of the Petition to Vacate the Award was untimely is misplaced. Even accepting Respondent's contention that the FAA, not the Nebraska Arbitration Act, controls here, service of the Petition was nevertheless timely.

Initially, it should be noted that the FAA is silent as to how time is to be counted, but with respect to the computation of the time to serve a party, Fed. R. Civ. P. 26(1)(A) provides, "When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period[.]" The triggering event here is the service of the Final Award.

Respondent first contends that service of the Partial Award in December 2016 is the proper event from which to calculate the time to serve the Petition to Vacate (see Rep. Memo

---

[1] This result appertains whether under either the FAA or the Nebraska arbitration act.

at p. 12, claiming "FAA § 12 refers to 'an award,' and is not expressly limited to the last in line of a series of awards"). However, that interpretation is inapposite here and would contravene both logic and the well-established definition of what constitutes an appealable order or final judgment. An order resolving *all* the issues raised in an independent special proceeding is a final, appealable order. *See e.g. Big John's Billiards v. State*, 283 Neb. 496 (2012). An order in a case is final if no further action by a court is necessary to dispose of the cause pending. *Lake v. Piper, Jaffray & Hopwood, Inc.*, 212 Neb. 570, 324 N.W.2d 660 (1982).

Further, should this Court decide to consider Respondent's extensive discussion of New York law, the Second Circuit has held that: "an arbitration award, to be final, must resolve all the issues submitted to arbitration, and that it must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998). Prior to establishing such finality, there would be no true award to vacate.

The Respondent nevertheless claims that the "Partial Final Award" determined all issues between the parties and thus was the decision from which the Petitioners should have sought vacatur. *See* Resp. Memo at p. 13. The argument is erroneous. The arbitrator himself reaffirmed the Partial Final Award in the subsequent "Final Award of Arbitrator" and stated "In [the Partial Final Award] I clearly delineated the reasons for my decision. For the same reasons . . . I further award as follows. . ." The Final Award then added an additional $9,506.00 in attorneys' fees, and $13,150.00 in costs. The arbitrator went on to direct that "The entirety of the Partial Final Award dated December 5, 2016, which awarded

14

[Respondent] $201,040.25 is incorporated herein as though fully set forth." *See* Ex. G to Marcus Dec.

Thus, no matter what the initial "Partial Final Award" stated, the arbitrator expressly incorporated the amount awarded into the "Final Award of Arbitrator" dated January 27, 2017 thereby creating the time period from which the 3 months under the FAA began to run to move to vacate the arbitrator's findings. There would have been no reason for the arbitrator to have re-awarded that amount in the Final Award unless it was intended that the Final Award with additional fees and expenses be the operative and final order from which the time to move to vacate should be measured.

The Petitioners had no way of knowing, until receiving the Final Award, whether the arbitrator would provide supplemental or revised rationale for his partial findings, including the self-imposed new legal standard related to rejecting the statute of limitations argument. Furthermore, there may have been additional grounds for vacatur or additional information negating grounds for vacatur. Only the Final Award ended the need for "further adjudication" of the arbitrated matters, as contemplated by *Rocket Jewelry, supra*. Accordingly, it is service of the Final Award, not the Partial Award, that is the triggering event for calculating the time to serve the Petition.

The Respondent further asserts that even if it is the Final Award date used to measure the time from which a motion to vacate may be filed, service of the Petition was not made upon the Respondent until local counsel agreed to accept service on May 8, 2017, thereby rendering the Petition untimely by at least 3 days. The argument is erroneous and conflates the procedural process which occurred.

The Petition was filed in the Supreme Court of the State of New York on April 27, 2017. The Final Award was not officially sent to the parties by the AAA until January 30, 2017. *See* Ex. H to Marcus Dec. Three months expired on April 30, 2017. Significantly, at the time the Petition was filed, a copy was mailed to Respondent's counsel on the same date. *See* Ex. I to Marcus Dec.

The mailing of the Petition was effective service on the Respondent at the time it was mailed – April 27, 2017, some 3 days *prior* to the running of the 3 month time period mandated by the FAA. The subsequent "service" on local counsel has no bearing on the fact that service was complete, as in the case of service on the parties by the AAA of the arbitrator's decision, upon mailing. The FAA does not indicate when service is deemed to be made, but New York law and the federal rules recognize that service is deemed made upon posting, not receipt. *See e.g.* CPLR § 2103(b)2 ("service by mail shall be complete upon mailing").

Consequently, the Petition was timely served and filed in this matter and the Respondent's efforts to argue to the contrary are unavailing.

## CONCLUSION

For all of the reasons set forth above and in the Petitioners' initial moving papers, the Court should (1) grant the Petition in its entirety and vacate the arbitration Final Award; (2) deny and dismiss the Cross-Petition seeking to confirm the arbitration award; (3) award attorneys' fees and costs to the Petitioners.

Respectfully submitted,

KEIDEL, WEDLON & CUNNINGHAM, LLP


By _____/s/_____
Stephen C. Cunningham, Esq.
Jan A. Marcus, Esq.
*Attorneys for the Petitioners*
*Black Hawk, Inc. and Mustang Enterprises, Inc.*
925 Westchester Avenue – Suite 400
White Plains, New York 10604
Tel: (914) 948-7000
Fax: (914) 948-7010
scunningham@kwcllp.com


TO: CLAIRE M. HANKIN, ESQ.
Wilson, Elser, Moskowitz, Edleman & Dicker, LLP
*Attorneys for the Respondent*
1133 Westchester Avenue
White Plains, New York 10604
Tel. (914) 323 -7000
Claire.hankin@wilsonelser.com